**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

April 21, 2026

# In the Court of Appeals of Georgia

A26A0540. SMART VENTURE CAPITAL, LLC v. RIVER MANSIONS PROPERTY ASSOCIATION, INC.

MERCIER, Judge.

Smart Venture Capital, LLC ("Smart Venture") appeals from the trial court's order dismissing its notice of appeal in this matter. For reasons that follow, we reverse.

The record shows that, in May 2020, River Mansions Property Owners Association, Inc. ("the Association") sued Viren Patel and Anupama Patel for damages and judicial foreclosure relating to the Patels' alleged failure to pay association assessments on property located in Duluth. On October 9, 2020, the Association filed an amended complaint adding Smart Venture — which held a security deed on the Patel property — as a defendant to the lawsuit. A private process

server attempted to serve Smart Venture's registered agent three times at the corporation's principal address, but service was unsuccessful.

On December 2, 2022, the process server filed an affidavit describing her service efforts. That same day, the Association's counsel filed an affidavit stating that the Association had exercised diligence in attempting to perfect service through a process server, but had been unsuccessful. Counsel further averred that he had served Smart Venture pursuant to OCGA § 14-11-1108 by mailing the amended complaint and accompanying documents to Smart Venture's office by certified mail, return receipt requested. Smart Venture did not answer the complaint, and, on July 22, 2021, the Association moved for default judgment. The trial court granted the motion on January 11, 2022, authorized the Association to initiate foreclosure proceedings on the property, and cancelled Smart Venture's security deed.[1]

On August 13, 2024, Smart Venture moved to set aside the default judgment pursuant to OCGA § 9-11-60(d)(1), asserting that it had not been served with process. In support of the motion, Smart Venture submitted the affidavit of its registered agent,

---

[1] The trial court also granted default judgment as to Anupama Patel in the amount of $9,451.46, and, in a separate order, granted the Association summary judgment against Viren Patel in the amount of $8,535.44. Those orders are not at issue in this appeal.

who averred that she was never served with the lawsuit, did not receive any mail (certified or otherwise) from the Association or its counsel during the relevant time period, and "was not aware of this lawsuit until recently."

The trial court denied the motion to set aside following a hearing held on December 9, 2024, concluding that the Association exercised reasonable diligence in attempting service through a private process server, then properly served Smart Venture via certified mail pursuant to OCGA § 14-11-1108. We granted Smart Venture's application for discretionary review of that ruling, and Smart Venture filed its notice of appeal on March 3, 2025, specifying that the transcript from the December 9, 2024 hearing be included in the appellate record.

In an effort to secure the December 9 transcript, Smart Venture reached out to the trial court on March 4, 2025, seeking contact information for the court reporter. The trial court responded with the information that same day. On March 18, 2025, Smart Venture requested that the court reporter prepare the transcript. After back and forth communication about completing payment, the court reporter informed Smart Venture on March 29, 2025, that she would "review [her] production queue" and let Smart Venture know when the transcript would be ready. She also indicated that

transcript preparation was on a "first come, first served basis as deposits are received" and that she had received numerous deposits prior to Smart Venture's payment. Ultimately, the transcript was filed on April 14, 2025.

The day before that filing, on April 13, 2025, the Association moved to dismiss the notice of appeal for failure to timely file the transcript, asserting that Smart Venture had missed the 30-day statutory deadline for submitting the transcript by 12 days and had not requested an extension of time. The trial court granted the motion and dismissed the appeal. It concluded that Smart Venture's 12-day delay was inexcusable and unreasonable. In finding unreasonableness, the trial court determined, in particular, that the delay held up the docketing of the appeal, preventing it from being placed on the earliest possible appellate calendar, thereby prejudicing the Association. This appeal followed.

1. Pursuant to OCGA § 5-6-42:

Where there is a transcript of evidence and proceedings to be included in the record on appeal, the appellant shall cause the transcript to be prepared and filed .... The party having the responsibility of filing the transcript shall cause it to be filed within 30 days after filing of the notice of appeal or designation by appellee, as the case may be, unless the time is extended[.]

An appeal generally should not be dismissed "because of failure of any party to cause the transcript of evidence and proceedings to be filed within the time allowed by law or order of court." OCGA § 5-6-48(c); see also OCGA § 5-6-48(f) ("An appeal shall not be dismissed ... because of failure of the court reporter to file the transcript of evidence and proceedings within the time allowed by law or order of court unless it affirmatively appears from the record that the failure was caused by the appellant."). After notice and the opportunity for a hearing, however, a trial court may dismiss a party's appeal "where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party." OCGA § 5-6-48(c).

In this regard, "whether the delay was unreasonable presents a threshold issue which refers principally to the length and effect of the delay." *Fulton County Bd. of Tax Assessors v. Love*, 289 Ga. App. 252, 254 (656 SE2d 576) (2008) (quotation marks omitted). A trial court has discretion in determining whether a delay is unreasonable and inexcusable, and we will not reverse that determination absent an abuse of discretion. See id. We must keep in mind, however, that the 30-day filing requirement in OCGA § 5-6-42 is not jurisdictional. See id. Rather, it is "a means to avoid delay

5

so the case can be presented on the earliest possible calendar in the appellate court[.]" Id. An appellant's failure to strictly comply with the requirement, therefore, does not justify dismissal of the appeal "unless the delay is unreasonable so as to affect the appeal itself." Id. (quotation marks omitted). In other words, "[w]here the delay in filing the transcript does not discernibly delay the docketing of the record in the appellate court, and does not prevent an appellate decision on the merits at the earliest possible date, the delay is not unreasonable." Id.

Without dispute, the transcript was filed 12 days after the statutory deadline expired on April 2, 2025, and Smart Venture never requested an extension of time. The trial court deemed this delay unreasonable after concluding that it negatively impacted the appellate schedule. According to the trial court, if the appeal had been transferred to this Court on April 2, 2025, we would have docketed it to the term *preceding* the term to which the appeal would have been docketed if transmitted on April 14, 2025.

The trial court based its finding on the fact that this Court's April term begins on the first Monday in April, which, in 2025, was April 7, 2025. See Court of Appeals Rule 12(2). The trial court's interpretation of our docketing procedure, however, was

incorrect. The December/Winter 2025 term ended on March 31, 2025. See OCGA § 15-2-4(c). Appeals received from that date to the end of the April 2025 term (July 17, 2025, see id.) would have been docketed to the same term. The filing delay between April 2, 2025, and April 14, 2025, therefore, did not impact the term to which the appeal would have been docketed.

Moreover, even if April 7, 2025, constituted the demarcation date with respect to docketing in this Court, a trial court clerk generally has five days *after* the filing of the transcript to send the appellate record to us. See OCGA § 5-6-43(a). Given this five-day window (which the trial court clerk may extend if necessary, see id.), there is no guarantee that, had the transcript been filed on April 2, 2025, the record would have been transmitted to this Court and docketed before the April term began on April 7, 2025. See *Fulton County Bd. of Tax Assessors*, 289 Ga. App. at 255 ("it is pure speculation to conclude that, if the transcript had been filed as part of the record 11 days earlier, the trial court clerk would have prepared and transmitted the entire record to this Court" by a particular date).

Simply put, the record does not support the trial court's conclusion that the minimal delay in filing the December 9, 2024 transcript impacted the appellate

schedule. Accordingly, the trial court abused its discretion in finding the delay

unreasonable, and we reverse the dismissal of Smart Venture's notice of appeal. See

*Fulton County Bd. of Tax Assessors*, 289 Ga. App. at 255 (because the trial court abused

its discretion in finding appellant's 11-day delay in filing the transcript unreasonable,

dismissal of appeal was error); *Galletta v. Hillcrest Abbey West*, 185 Ga. App. 20,

22–23(1) (363 SE2d 265) (1987) (trial court erred in dismissing appeal where 11-day

delay in filing transcript did not prevent the placement of the case on the earliest

possible appellate calendar or delay the docketing of the appeal).

2. Having reversed the order dismissing Smart Venture's notice of appeal, we

will now address the merits of the underlying appeal, through which Smart Venture

challenges the denial of its motion to set aside the default judgment.[2] See *Patel v. Patel*,

342 Ga. App. 81, 89(2) (802 SE2d 871) (2017) (addressing merits of underlying appeal

after reversing dismissal of notice of appeal). "We review a trial court's refusal to set

---

[2] The Association suggests that the order denying the motion to set aside is not properly before us "at this time[.]" Both parties, however, thoroughly briefed the issues relating to that order, and we see no reason to remand this case to the trial court so that it can return the appeal to us for resolution. See *Patel*, 342 Ga. App. at 89(2). Compare *Hill v. Bd. of Regents of the Univ. Sys. of Ga.*, 346 Ga. App. 830, 832 (816 SE2d 296) (2018) (declining to address underlying appeal after reversing dismissal of notice of appeal where parties had not briefed the issues raised in that appeal).

aside a default judgment for an abuse of discretion, but review questions of law de novo." *Anglin v. State Farm Fire & Cas. Ins. Co.*, 348 Ga. App. 362, 363 (823 SE2d 51) (2019) (quotation marks omitted).

Smart Venture moved to set aside the judgment pursuant to OCGA § 9-11-60(d)(1), which authorizes a motion to set aside based upon "[l]ack of jurisdiction over the person or the subject matter[.]" Specifically, Smart Venture argued below — as it does on appeal — that the default judgment must be set aside because the Association never properly served it with the lawsuit. We agree.

The Association purportedly served Smart Venture through the certified mail procedure outlined in OCGA § 14-11-1108(a):

> If a limited liability company has no registered agent or the agent cannot with reasonable diligence be served, the limited liability company may be served by registered or certified mail or statutory overnight delivery, return receipt requested, addressed to the limited liability company at its principal office. Service is perfected under the immediately preceding sentence at the earliest of:
>
> (1) The date the limited liability company receives the mail;
>
> (2) The date shown on the return receipt, if signed on behalf of the limited liability company; or

9

(3) Five days after its deposit in the mail, as evidenced by the postmark, if mailed postage prepaid and correctly addressed.

Asserting that it exercised reasonable diligence in attempting to locate and serve Smart Venture's registered agent, the Association claims that it ultimately perfected service by mailing the summons, complaint, and other documents to Smart Venture by certified mail on December 2, 2020. Smart Venture's registered agent, however, averred that she never received the certified mailing. The Association has pointed to no contrary evidence indicating that Smart Venture received the mail or signed the certified mail return receipt, circumstances that would support a finding of perfected service. See OCGA § 14-11-1108(a)(1)-(2). And although proof of receipt is not required to establish service under OCGA § 14-11-1108(a)(3), that subsection provides that service is perfected five days after mailing, "*as evidenced by the postmark*[.]" (emphasis supplied).

When interpreting a statute, we apply the fundamental rules of statutory construction, which require us, among other things, "to give words their plain and ordinary meaning[.]" *Gonzalez v. Miller*, 320 Ga. 170, 177(3)(a) (907 SE2d 859) (2024). A "postmark" is "[a] stamp or mark put on letters received at the post office

for transmission through the mail." *Abbott Constr. Co. v. Hartsfield*, 237 Ga. 247, 247–48 (227 SE2d 254) (1976) (quotation marks omitted); see also *Kicklighter v. Blocker*, 164 Ga. App. 306, 308(1) (297 SE2d 83) (1982) (same). It is "[a]n official mark put by the post office on an item of mail to cancel the stamp and to indicate the place and date of sending or receipt." Black's Law Dictionary (12th ed. 2024). Counsel for the Association testified by affidavit that he mailed the documents to Smart Venture by certified mail, and he attached to his affidavit a copy of a cover letter dated December 2, 2020, as well as a copy of the certified mail receipt. That receipt, however, does not reflect a postmark,[3] and we have found no other postmarked evidence in the record.

"A suit commences only after the filing of a petition and the proper service of process upon the defendant as required and authorized by law." *Anglin*, 348 Ga. App. at 364(1) (quotation marks omitted). The record contains no evidence that the Association served Smart Venture with the lawsuit. The Association *attempted* to

---

[3] In its order denying Smart Venture's motion to set aside, the trial court found that the certified mail receipt included "a post mark ... evidencing mailing." The record does not support this finding. See *Anglin*, 348 Ga. App. at 364 (reviewing trial court's factual findings on a motion to set aside under the any evidence standard). Although the receipt appears to reflect a stamp from a private postage meter, it contains no mark from the United States Post Office.

perfect service through certified mail pursuant to OCGA § 14-11-1108(a). But nothing indicates that Smart Venture received the mailing, that Smart Venture signed the return receipt, or that the mailing was postmarked. In fact, the record shows the opposite, as Smart Venture's registered agent denied receipt of or knowledge of the suit, and the certified mail receipt lacks a postmark.

None of the circumstances for perfecting service under OCGA § 14-11-1108(a) occurred here. Accordingly, because Smart Venture was never properly served, the trial court erred in denying Smart Venture's motion to set aside the default judgment.[4] See *Anglin*, 348 Ga. App. at 366(1) (trial court erred in denying motion to set aside default judgment where service on defendant not perfected); *Vasile v. Addo*, 341 Ga. App. 236, 242(2) (800 SE2d 1) (2017) (same).

*Judgment reversed. Brown, C. J., and Rickman, P. J., concur.*

---

[4] As further support for denying the motion to set aside, the trial court's order suggests that the motion was untimely, stating that Smart Venture "had ample opportunity to assert its challenge of the [default] [j]udgment more promptly than 2.5 years after the fact." Smart Venture's motion was not untimely. Motions to set aside generally must be filed within three years of entry of the judgment at issue. See OCGA § 9-11-60(f). And "[a] judgment void because of lack of jurisdiction of the person or subject matter may be attacked at any time." Id.